|                           |   |                                  |
|---------------------------|---|----------------------------------|
| UNITED STATES             | : | UNITED STATES DISTRICT COURT     |
|                           | : | DISTRICT OF NEW JERSEY           |
| v.                        | : |                                  |
|                           | : | No. 12-cr-00303-NLH              |
| ADAM LACERDA, et al.,     | : |                                  |
|                           | : |                                  |
| Defendants                | : |                                  |

MEMORANDUM OF LAW
IN SUPPORT OF PRETRIAL MOTIONS
OF DEFENDANT GENEVIEVE MANZONI

INTRODUCTION

<u>The Timeshare Charges</u>.  Genevieve Manzoni is charged in one conspiracy count and one substantive count with fraud in connection with her work as a sales person for the VO Group.  The essence of the fraud charge against her is that she used the VO Group script to sell VO Group's services to timeshare owners she contacted by telephone.  Because Ms. Manzoni was just one of numerous VO Group sales people, the Indictment provides very little in the way of detail regarding the specifics of what she is alleged to have done.  The indictment contains a broad description of an overall scheme, but it makes no allegation that Ms. Manzoni's role was anything other than speaking to customers on the phone along the lines outlined in the VO scripts.  These are scripts which the prosecution has noted elsewhere were apparently blessed by legal counsel, or at least the VO sales staff was so informed.  Nowhere does the indictment suggest that Ms. Manzoni was privy to the inner workings of the VO Group, nor that she had any control over any funds, nor that she had any role in drafting contracts or scripts,

nor that she participated in a wide range of other matters mentioned in the indictment. In order to defend herself at trial, Ms. Manzoni ought to be advised of what it is specifically that she is alleged to have done or said with knowledge of falsity. To that end, she moves for a bill of particulars, as discussed in detail below.

<u>The unemployment charge</u>. The indictment also charges Ms. Manzoni with one count of wire fraud for a completely separate alleged scheme involving her unemployment benefits. The prosecution's precise legal theory as to Ms. Manzoni's alleged unemployment fraud is not at all clear from the indictment. The indictment does not allege that Ms. Manzoni's unemployment fraud was connected in any way to the unemployment charges against other defendants who are charged separately in other counts, nor does the indictment suggest that the unemployment fraud is connected in any way with any criminal aspect of the timeshare allegations. The indictment merely alleges that Ms. Manzoni "worked" at the VO Group at the time she applied for unemployment benefits. (Superseding Indictment, Counts 40-42, ¶13, incorporated by reference into Count 44 against Ms. Manzoni) As discussed below, given the confusing state of the law as to when and to what extent sales people are entitled to unemployment benefits during the time period that they are also engaged in commission sales work, and given the fact that Ms. Manzoni evidently reported most if not all of her VO Group earnings to the unemployment authorities, the indictment's lack of specificity impairs Ms. Manzoni's ability to contest the legal sufficiency of the unemployment charge or to prepare to defend herself against it at trial. The details should be spelled out in a Bill of Particulars.

<u>Joinder</u>. The two separate fraud charges against Ms. Manzoni are unrelated to each other and, accordingly, are misjoined under F.R.Crim.P. 8(b), which

2

requires that the charges be severed. Furthermore, Ms. Manzoni would suffer great prejudice if she were tried on either or both schemes in a joint trial with her codefendants. Accordingly, under F.R.Crim.P. 14, the charges against her should be severed, and her case should be severed from the case against her codefendants.

## ARGUMENT

I.   THE PROSECUTION SHOULD PROVIDE
     A BILL OF PARTICULARS TO IDENTIFY
     THE SPECIFICS OF THE CHARGED OFFENSES

Defendant Genevieve Manzoni moves, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, for an order directing the prosecution to provide a bill of particulars in order to inform Defendant of the details of the charges against her, to allow Defendant to prepare effectively for trial, and to aid Defendant in the assertion of other important rights.  The two-faceted indictment in this case is deficient in detail in different ways as to each of the two separate schemes contained in it.

The indictment describes the unemployment scheme only in generic and conclusory terms. For example, it charges that "defendant falsely asserted that s/he was not currently employed. In fact, the defendant worked at the VO Group." (Superseding Indictment, Counts 40-42 ¶13, incorporated by reference into Count 44 against Ms. Manzoni). One reading of the indictment might suggest that the thrust of the prosecution's case is that Ms. Manzoni concealed her VO Group earnings from the unemployment authorities. In fact, as the prosecution's own discovery documents have

revealed, Ms. Manzoni repeatedly informed the unemployment authorities of her VO Group earnings.[1]

Based on the evidence provided in discovery, it appears that the prosecution's theory may be something other than the simple concealment of commission income. Conceivably, the prosecution's theory is that Ms. Manzoni was not entitled to unemployment benefits during the entire time that she had any association with VO Group (whether as employee or independent contractor) regardless of what commissions she earned or when they were paid.[2] If that were the prosecution's theory, it would be wrong as a matter of law and the charges would be legally insufficient. In New Jersey, the mere fact that a person is engaged in sales activities that might yield commission income in the future does not automatically disqualify the person from unemployment benefits. *Borromeo v. Board of Review*, 196 N.J.Super. 576, 483 A.2d 833 (N.J.Super., App. Div. 1984). The issue of when a commission salesperson is entitled to unemployment benefits is a complex and often confusing legal issue which raises a host of nuances of unemployment law far beyond the knowledge of most lay people and many unemployment bureaucrats. This is an issue which has bedeviled courts in various jurisdictions. *E.g., Crocker v. Unemployment Compensation Bd. of Review*, 63 A.3d 496 (Pa. Commw. 2013); *Meder v. Rapid Sports Center Inc.*, 773 N.W.2d 341 (Minn. App. 2009). If the prosecution's unemployment case is based on a particular view of the law as

---

[1] Attached hereto as Exhibit A is what purports to be a New Jersey Department of Labor Claimant Ledger, provided in discovery, which appears to show that in the first half of 2011, Ms. Manzoni received unemployment benefits for 9 separate weeks; on six other weeks she reported earnings (presumably from VO Group) and received no check from unemployment; and for a period of over two months did not submit any claim at all.
[2] This is at least suggested by the allegation regarding the total amount benefits to which the prosecution contends Ms. Manzoni was not entitled, but deciphering the logic of the unemployment charge is like reading tea leaves.

to when a salesperson is considered to have earned commission income, or under what circumstances a salesperson is "available" for other work, or a host of other regulatory minutiae, defendant is entitled to know what that theory is.

The indictment is opaque as to other crucial details. When the indictment charges that Ms. Manzoni received benefits "to which she was not entitled" it is not at all clear to which weeks the indictment is referring nor is it at all clear under what legal theory the prosecution will argue Ms. Manzoni was disqualified for any particular benefit check. The indictment charges that Ms. Manzoni's scheme involved "<u>materially</u> false pretenses representations and promises" (¶11) (emphasis added). The substance of the false statements, let alone the alleged materiality, is also nowhere apparent on the face of the indictment and should be supplied in a bill of particulars. If the prosecution's theory is limited to the allegation that Ms. Manzoni told unemployment authorities "she was not currently employed" then the prosecution should say so now and not try to shift its theory in mid-trial.

Once the prosecution spells out the particulars of the unemployment fraud charges, it may be that the charge itself will be legally insufficient and subject to challenge because it fails to state an offense; or it may be that expert testimony will be required; or it may be that further investigation into the workings of the unemployment bureaucracy will be necessary. In any event, the defense needs to understand just what the charge is so that it can be prepared to cross-examine witnesses and if necessary present defense evidence. Without a bill of particulars on this charge, the defense is unable to prepare effectively for trial.

Understanding the charges is so important that the failure to provide a bill of particulars can be reversible error when the indictment does not inform the defendant with particularity of what allegations she has to meet at trial. *Singer v. United States*, 58 F.2d 74 (3d Cir. 1932). A bill of particulars can also be critical in allowing a reviewing Court to evaluate the adequacy of the indictment. *United States v. Frankel*, 721 F.2d 917, 919 (3d Cir. 1983). As then-Judge, now Justice Alito explained, "... our law has traditionally demanded a degree of specificity in criminal prosecutions. Many rules of law, including those governing charging instruments and bills of particulars, work toward this end." *United States v. Edmonds*, 80 F.3d 810, 831 (3d Cir. 1996)(en banc)(Alito, concurring and dissenting)(footnotes omitted).

When the unemployment system has a Byzantine process for collecting and processing weekly claims, and when there are complex legal issues as to the impact of commission income on entitlement to benefits, the indictment should provide a clearly understood statement of the prosecution's theory. Where, as here, such clarity is missing from the indictment, a bill of particulars should provide these details

A bill of particulars is equally important as to the timeshare charges. Given the number of potential witnesses, the number of witness statements, and the huge volume of documents, a defendant like Ms. Manzoni with only a very limited role finds herself digging for a needle in a haystack without a bill of particulars to guide trial preparation efforts. A bill of particulars is appropriate to apprise the defense of the specific affirmative acts on which the prosecution will rely to prove the offense at trial. *United States v. Voigt*, 89 F.3d 1050, 1088-89 (3d Cir. 1996). A bill of particulars can

also assist the Court by clarifying exactly what conduct the prosecution contends is the offense.  *See United States v. Schiff*, 602 F.3d 152, 169 (3d Cir. 2010).

Because the jury will ultimately be asked to determine whether Ms. Manzoni's conduct constituted knowing misrepresentation -- as opposed to innocently repeating lines from a script -- it is essential to define at the outset what statements by Ms. Manzoni the prosecution contends were knowingly false.  This function of a bill of particulars can be particularly important where the jury is called upon to determine some specific objective or predicate element.  *See United States  v. Edmonds*, 80 F.3d 810, 831 (3d Cir. 1996)(en banc).  Where, as here, falsity is an aspect of the offense charged in the indictment, a bill of particulars is appropriate in order to inform the defendant of precisely what it is the government alleges to have been false.  *See United States v. Tucker*, 473 F.2d 1290, 1293 (6th Cir. 1973).

The Third Circuit has found it to be reversible error to fail to provide the defense with a bill of particulars setting forth precisely what it was which the government did not believe to be true and the particularized facts on which the government will rely in support of the allegation of falsity.  *United States v. Slawik*, 548 F.2d 75, 79, 83 (3d Cir. 1977); *see generally United States v. Reilly,* 33 F.3d 1396, 1419-20 (3d Cir. 1994).  It is precisely the sort of particulars sought by defendant here which the courts recognize as serving that important function:

> More importantly, the defense sought by motion and received extensive bills of particulars which detailed the underlying fraudulent acts already discussed. This was a typical case requiring identification of the transactions relied upon to permit the defendant to prepare for trial. These particulars were supplied by the prosecution.

*United States v. Smith*, 523 F.2d 771, 779 (5th Cir. 1975).

7

While in some cases discovery can obviate the need for a bill of particulars, *see United States v. Urban*, 404 F.3d 754 (3d Cir. 2005), the opposite is true here. The prosecution has provided voluminous discovery material, but without any meaningful roadmap or index. There are thousands upon thousands of pages of documents.

Moreover, there have been hundreds of witness interviews which have been made available to the defense only in the most limited and unusable fashion. The prosecution has insisted that the memoranda of witness interviews be reviewed by defense counsel only at the FBI office in Northfield, New Jersey. Defense counsel's request to make copies of these memoranda -- a process which would cost the prosecution nothing and would consume less than an hour -- has been repeatedly refused. This procedure does not seem to advance any legitimate law enforcement interest. The prosecutor has not imposed any limits on the handwritten notes that counsel can scribble during the several hours available at each visit to the FBI's offices. The only impact of this procedure is that it has markedly impaired counsel's ability to obtain and digest and utilize the contents of these crucial documents. Whatever the propriety of this sort of illusory open file discovery, it underscores the need for a bill of particulars.

Among the thousands of pages of contracts, correspondence, interview memoranda with hundreds of witnesses and all manner of other records, almost none pertain to the single person identified in the indictment as Ms. Manzoni's customer. Unless the prosecution specifies the customers it already knows Ms. Manzoni to have dealt with, the extraordinary volume of discovery – whatever the salutary purpose – will have the unfortunate effect of overwhelming the defense with irrelevant details. Without

a bill of particulars to identify the relevant incidents, counsel facing a mountain of documents will be hamstrung in trial preparation efforts. The discovery in this case, instead of obviating the need for a bill of particulars, makes it all the more important to have one.

Under all the circumstances of this case, the prosecution should provide a bill of particulars that specifies:

- as to the time share fraud charge, each customer with whom Ms. Manzoni communicated directly

- as to the time share fraud charge, the specific falsity of any statement by Ms. Manzoni to a customer

- as to the unemployment fraud charge, each unemployment check to which the prosecution contends Ms. Manzoni was not entitled and a clear explanation of why the prosecution contends she was not entitled to it

- as to the unemployment fraud, an identification of any specific statute, rule or regulation upon which the prosecution will rely or offer evidence

- as to the unemployment fraud, the date, manner and contents of any statement by Ms. Manzoni to the New Jersey unemployment system (whether verbally, by computer, or by act or omission) which is alleged to be false or fraudulent and the manner in which it is alleged to be false or fraudulent.

This is information that the prosecution has at its fingertips and can provide without any great burden. Without it, the defense will be significantly prejudiced.

II.   THE TIMESHARE CHARGES SHOULD BE SEVERED
      FROM THE UNEMPLOYMENT CHARGES

   A.   RULE 8 MISJOINDER

The timeshare charges against Ms. Manzoni in Counts 1 and 19 were improperly joined with the unemployment fraud charge against her in Count 44 and must be severed. This case completely fails the test of Rule 8(b) of the Federal Rules of Criminal Procedure which provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

F.R.Crim.P. 8(b). The requirement that there be a "series of acts or transactions" requires more than mere temporal or evidentiary overlap between to separate schemes. The separate timeshare fraud and unemployment fraud charges fail that test because they are not part of any common scheme; they are not based on the same series of acts or transactions.[3]

Crucially, the focus of the misjoinder inquiry must be on the nature of the offenses, not mere evidentiary overlap. That is, the "series" of acts and transactions which is the lynchpin to joinder is premised on logical interrelationship and connections, not merely temporal or evidential coincidence. In the words of the Third Circuit, what is required is a real nexus. *United States v. Jimenez*, 513 F.3d 62, 82–83 (3d Cir.2008)

---

[3] Rule 8(b) governs this case. Rule 8(a) dealing with joinder of offenses applies only to prosecutions involving a single defendant. In a multiple defendant case, the tests for joinder of offenses and defendants merge into Rule 8(b). *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003).

10

("there must exist a transactional nexus in that the defendants must have participated in 'the same act or transaction, or in the same series of acts or transactions,' before joinder of defendants in a multiple-defendant trial is proper."); *accord United States v. Joyner*, 201 F.3d 61, 75 (2d Cir. 2000) ("logical nexus").

The individual unemployment fraud charges in the Indictment lack any suggestion of interconnection or interdependency. Indeed, while the overall language of the unemployment fraud charges is identical for each unemployment count, consisting largely of a description of the way that the prosecution believes the unemployment bureaucracy operates, the indictment goes out of its way to describe the individual defendants' offenses as separate individual "schemes" rather than a single overall scheme.[4] And the charges as framed by the indictment are what matters at this juncture. *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003) ("Our inquiry into whether offenses or defendants were properly joined focuses upon the indictment, not upon the proof that was subsequently produced at trial."); *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985).

The Third Circuit requires a much greater connection between separately charged schemes in order to justify a joint trial than is found in the timeshare scheme and the unemployment scheme alleged in this indictment:

> We have found sufficient connections between offenses undertaken in furtherance of and in association with a charged enterprise or conspiracy. *Cf. Irizarry,* 341 F.3d at 289–90 (concluding same act or transaction requirement satisfied where indictment charged criminal acts either as predicates for racketeering or as acts undertaken in furtherance of

---

[4] Because the various unemployment charges against individual defendants involve separate schemes with no logical connection, Rule 8 requires that the unemployment charges against Ms. Manzoni be tried separately from the unemployment charges against the others.

11

> commonly charged RICO enterprise); *Eufrasio,* 935 F.2d at 570–71 (finding proper the joinder of offenses which constituted a single series of related acts furthering the RICO enterprise and its purposes). In addition, counts are similar if they are "somewhat alike" or share "a general likeness," or otherwise have a sufficient logical connection and can be tried using the same evidence. *See United States v. Rivera,* 546 F.3d 245, 253 (2d Cir.2008); *United States v. Graham,* 275 F.3d 490, 512 (6th Cir.2001) ("[W]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate."). Moreover, offenses may be joined if they occurred within a relatively short period of time of each other and the evidence of each overlaps. *See United States v. Donaldson,* 978 F.2d 381, 391 (7th Cir.1992).

*United States v. Heilman, supra*, 377 Fed.Appx. at 202.   The facts of the cases cited by

the Third Circuit elucidate the point.  For example, in the *Donaldson* case cited by the

Third Circuit:

> Here, within a four-week period, two banks were each robbed twice, two banks were robbed on the same day, and all the banks were within a few blocks of each other. The handwriting evidence for two of the counts overlapped, and the five eye-witnesses all described a similar robber.

*United* States *v. Donaldson*, 978 F.2d 381, 391 (7th Cir.1992).  And in the *Rivera* case

cited by the Third Circuit:

> The joinder was proper. Counts one, two, three and four share a "general likeness" in terms of the conduct and events alleged: over a four-month period, Rivera targeted Brian, Garrett, Michael, David in Internet chat rooms; exchanged sexually explicit messages and photographs with them; and enticed them to meet for illicit sexual encounters. During one of those encounters, Rivera took the photographs that form the basis of count four. And some of the same exhibits were used to prove counts one, two and three: the dossiers Rivera maintained of his sexual experiences, which listed Garrett and Brian; and the transcript of an Internet chat in which Rivera said that he had abused five boys, including Garrett and Brian. As to count five (possession of child pornography), we agree with the Eleventh Circuit that "child molestation and child pornography ... plainly represent acts of 'similar character' involving the extraordinary mistreatment of children." *United States v. Hersh,* 297 F.3d 1233, 1242 (11th Cir.2002). Accordingly, the five counts were properly joined.

*United States v. Rivera*, 546 F.3d 245, 253-54 (2d Cir. 2008).

12

The mere fact that the two different charges in the present case are both allegedly fraudulent schemes is of no moment to the joinder analysis. *United States v. Ramallo-Diaz,* 455 F.Supp.2d 22, 29-30 (D.P.R. 2006) (a conspiracy to embezzle union dues was misjoined with a conspiracy to embezzle funds from the union's health plan); *United States v. Quinn,* 365 F.2d 256, 264 (7th Cir.1966)(Court of Appeals reversed for misjoinder of two separate bank misapplication schemes even though involving the same bank and even though occurring only a few months apart).

The mere fact that there is some factual overlap between the two charges does not justify joinder. See *United States v. Myers*, 700 F.Supp. 1358, 1364-65 (D.N.J. 1988). And the evidence is overlapping in only the most artificial and tangential sense. Crucially, if the charges were severed, no evidence related to Ms. Manzoni's receipt of unemployment benefits would be admissible at the trial of the VO Group charges. *Compare United States v. Ferrarini*, 9 F.Supp.2d 284, 292 (S.D.N.Y.1998) (finding a substantial connection because "evidence of those activities—<u>and their unlawful nature</u>—would be necessary at a separate trial") (emphasis added). See *United States v. Suggs*, 531 F.Supp.2d 13 (D.D.C. 2008) (unrelated crimes discovered in same investigation cannot be joined).

The Indictment in this case does not contain any allegation that the timeshare scheme and the unemployment scheme are interconnected in any way. In this respect, the present case is markedly different from prosecutions in which joinder is permitted, such as a tax fraud case is linked to some other crime by an allegation that the one arose directly out of the other by virtue of the necessity of concealment being an integral part of the criminal enterprise. *See, e.g., United States v. Bibby*, 752 F.2d 116

13

(6th Cir. 1985); *United States v. Bennett*, 702 F.2d 833 (9th Cir. 1983). In contrast, the prosecution here does not contend that the two different fraud charges against Ms. Manzoni are integral parts of the same criminal enterprise.[5]

Recognizing the great risk of unfair prejudice in joining disparate offenses for trial, the courts look for real and understandable connection between criminal schemes that are to be tried together and not mere cosmetic similarities or factual overlaps. *See United States v. Nicely*, 922 F.2d 850, 855 (D.C. Cir. 1991) ("identifying the common objective as making money and the shared *modus operandi* as telling lies are patently insufficient grounds for joinder."). What the courts look for -- and what is missing here -- is a logical relatedness, *United States v. Lloyd*, 10 F.3d 1197 (6th Cir. 1993) ("logically related"), or a common scheme or plan. *United States. Suggs*, 531 F.Supp.2d 13(D.D.C. 2008) (common scheme or plan required); *United States v. Santoni*, 585 F.2d 667 (4th Cir. 1978) (common scheme or plan).

While Rule 8(b) affords prosecutors some leeway in joining various charges that are part of an overarching criminal enterprise, the Rule does not dispense with the nexus or common scheme requirement. *United States v. Giampa,* 904 F.Supp. 235 (D.N.J. 1995). To the contrary, the Courts recognize that the inherent prejudice of

---

[5] For that reason, *United States v. Golomb*, 754 F.2d 86, 88 (S.D.N.Y. 1985) is of no comfort to the prosecution. That was a case in which the defendant allegedly assisted in one of the charged crimes specifically in return for his codefendants' assistance in the other charged crime. There is no such interdependency in our case. Indeed, the Superseding Indictment alleges that each defendant's unemployment scheme was a separate crime; it does not even contend that the various individual unemployment schemes were connected with each other let alone that they had any connection with the alleged time share scheme.

14

presenting a jury with unrelated charges against a defendant is so great that misjoinder under Rule 8(b) is prejudicial per se. *Id.*

B. MS. MANZONI SHOULD BE TRIED SEPARATELY FROM THE OTHER DEFENDANTS

Rule 14 of the Federal Rules of Criminal Procedure gives the Court broad power to protect a defendant from the prejudice that can result from a joint trial. This case presents the special circumstances where this protection is warranted. The Rule provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

F.R.Crim.P. 14(a).

There are several circumstances particular to this case that warrant Rule 14 severance. A joint trial particularly problematic in this case because the two alleged schemes are so disparate but also complex. This places Ms. Manzoni in the dilemma of having to refrain from testifying in one case as to which she might be able to present important exculpatory evidence as the cost of preserving her constitutional right not to testify as to a completely different set of events and circumstances. *United States v. Sampson*, 385 F.3d 183 (2d Cir. 2004); *United States v. Hassoun*, 477 F.Supp.2d 1210, (S.D.Fla. 2007).

Severance is also appropriate because in this case there is a significant risk that conflicting defenses will prejudice Ms. Manzoni. This is an issue that should not wait until trial is underway and a remedy is more difficult. *United States v. Quintero*, 38 F.3d 1317 (3rd Cir. 1994). The very different situation of Ms. Manzoni as someone

15

outside the core group, someone who basically followed a script, will inevitably give rise to conflicting defenses. Another unique factor of this case calling for severance is that a joint trial of the various defendants charged each with his or her own unemployment fraud would inevitably lead the jury to assume -- erroneously -- that there was some concerted action among them, and this prejudicial inference would inevitably spill over into the timeshare conspiracy case.

       Defendant acknowledges that joint trials of separate defendants "conserve [public] funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *Bruton v. United States*, 391 U.S. 123, 134 (1968). A balance must be struck, however, between the policies of judicial economy and the avoidance of inconsistent verdicts and the right of a party to a fair trial. *Id.* In this case, the prejudice from a joint trial with defendants who played a very different role in events and who have very different defenses could be avoided with a separate trial for Ms. Manzoni.

III.  MS. MANZONI SHOULD BE ALLOWED TO JOIN
IN THE MOTIONS OF OTHER CODEFENDANTS.

The defense requests permission to join in any of the motions of codefendants which are deemed appropriate to Ms. Manzoni's circumstances.

CONCLUSION

Defendant's motions should be granted.

Respectfully submitted,

/s Ralph A. Jacobs
_____
Ralph A. Jacobs
Jacobs Singer Kivitz & Herman LLC
34 Tanner Street
Haddonfield, NJ  08033
856- 427-0330
Attorney for Defendant, Genevieve Manzoni

Dated:  May 14, 2013